**Ernest BERZOLLA, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 79 C 3093 (ERN).**

United States District Court, E. D. New York.

May 11, 1982.

Marshall G. Kaplan, Brooklyn, N. Y., for plaintiff; Charles A. Nolan, Jr., Staten Island, N. Y., of counsel.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y., for defendant; Frank V. Smith, III, Regional Atty., Dept. of Health and Human Services, and Julia T. Reed, New York City, of counsel.

MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

By this action pursuant to 42 U.S.C. § 405(g) plaintiff seeks judicial review of a final determination of the defendant Secretary of Health and Human Services which denied his applications for a period of disability and Social Security disability insurance benefits. Subsequently, the parties each filed a motion for judgment on the pleadings based upon the administrative record. For the reasons which follow, the Court concludes that the Secretary's determination is not supported by substantial evidence and that the case should be remanded for the determination of a period of disability and the payment of benefits accordingly.

Plaintiff is now 47 years of age and during his youth completed two years of machine shop training in a vocational high school. After serving four years in the United States Navy, he was employed as a messenger and attended the Manhattan School of Printing at night. Thereafter he was employed for about six years as a lithograph machine operator, which required

constant standing. He left that occupation to become a truck driver for a milk and ice cream company, which, in addition to driving, required heavy loading and unloading of trucks. After some 11 years he left that work about June 1973 to become a bus driver for the New York City Transit Authority.

On July 16, 1974, while plaintiff was riding as a passenger on a Transit Authority bus, the bus was involved in an accident as a result of which plaintiff suffered a traumatic amputation of his right foot. He was removed to St. Vincent's Hospital, Staten Island, where an emergency amputation of upper portions of the right leg below the knee was performed because of extensive bone fractures throughout the leg. Tr. 153.[1] He was discharged from the hospital on August 20, 1974. Tr. 154. Subsequently, after a prosthesis had been fitted, inflammation of the remaining stump developed which prevented use of the prosthesis. Tr. 160. Plaintiff underwent surgery by Dr. Lee again on September 11, 1976, to correct that condition and to remove a cyst, remaining in St. Vincent's Hospital for four days.

Following the amputation and his subsequent difficulties in adjusting to the prosthesis, plaintiff was unable to return to work, and on January 13, 1976, his treating surgeon, Dr. Lee, wrote a letter stating that "it has become quite clear that he [plaintiff] will be unable to return to his usual duties as a bus driver permanently." Tr. 169. Thereafter, in October 1976 his prosthesis was again changed, and he had further operations to remove cysts in November 1978 and September 1979. To date, plaintiff has not returned to work and his employment with the Transit Authority has been terminated.

On January 22, 1976, plaintiff filed an application for Social Security disability insurance benefits claiming inability to work since July 16, 1974, because of the loss of his leg and a "nervous condition." The latter condition refers to a pronounced tic which developed after his leg injury and is discussed hereinafter. Plaintiff's 1976 application was denied initially and on reconsideration, but as indicated below was considered in conjunction with a further application.

On November 22, 1978, plaintiff filed a second application for disability insurance benefits for the same disabilities claimed in the earlier one. Following the denial of this application on original consideration and reconsideration, plaintiff obtained a de novo hearing before an administrative law judge (ALJ), which was conducted on October 3, 1979. Plaintiff, who was represented by an attorney, testified at the hearing, as did Dr. James F. Connell, a board certified surgeon, who had examined plaintiff at his home in April 1978, and again on August 29, 1979 at the doctor's office. The other evidence before the ALJ consisted of hospital records and physician's reports.

These included a report dated March 21, 1979 by Dr. Lucy Rea, a psychiatrist, who had been retained by the State Bureau of Disability Determinations to examine plaintiff. She conducted that examination in late 1978 or early 1979 and found him suffering "a lot of anxiety and nervousness which is definitely coming from inside the patient and is not generated deliberately." Her diagnosis was that he suffers from "hysterical personality with traumatic tics," with "probably chronic symptomatology," and that his prognosis is guarded. Tr. 185–7.

On October 10, 1979, the ALJ filed his decision concluding that plaintiff was not entitled to a period of disability or disability insurance benefits under either his 1976 or 1978 applications. Tr. 8–14. Essentially the decision was based on findings that although plaintiff's amputation prevented him from performing any of his previous jobs, his "emotional" condition did not prevent him from performing "basic work-related functions." Tr. 13. Applying the Secretary's new regulations, the ALJ further concluded that plaintiff had the residual functional capacity to perform at least sedentary work, citing former § 404.1510(b)

1. References are to pages of the administrative record.

of Subpart P of Regulations No. 4. Tr. 13. The latter conclusion rests substantially on two "reports" of Dr. Milovan Rakic, director of the amputee clinic at St. Vincent's Medical Center, described by the ALJ as the physician who "primarily" treated the plaintiff. Tr. 11.

Close scrutiny of the administrative record compels the conclusion that neither the so-called "reports" of Dr. Rakic nor any of the other evidence referred to by the ALJ provides substantial support for the Secretary's finding of nondisability in this case. To begin with, there is no evidentiary basis for viewing Dr. Rakic as a physician who "primarily" treated plaintiff prior to 1977 (Tr. 60), or even examined him for purposes of making a report which the Secretary might be entitled to consider under the rule of *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971).

Dr. Rakic is neither a surgeon nor a psychiatrist; his specialties are rheumatology, physical medicine and rehabilitation. Tr. 174. Moreover, the so-called "reports" are merely Social Security Administration forms filled in with data apparently derived from St. Vincent's hospital records. One is dated "3/2/76" and the other "1–27–77." Tr. 171–173. Obviously, they do not purport to describe plaintiff's condition from the time he entered St. Vincent's on July 16, 1974, but speak only as of their dates. As plaintiff testified at the hearing, the doctor who treated him from the onset of his injury on July 6, 1974 until December 1976—a period of almost two and a half years—was Dr. Lee. Tr. 59, 153–4. Not until 1977 did plaintiff see Dr. Rakic, when he started going to the amputee clinic at intervals of two or three months, later reduced to once every six months. Tr. 60.

Totally ignored by the ALJ was the report of Dr. Edward D. Lucey, a board certified specialist in orthopedic surgery, who reported his findings regarding plaintiff on April 7, 1978. Tr. 178–9. Dr. Lucey noted marked atrophy of plaintiff's right thigh and marked tenderness to palpation over the stump area. Taking into account plaintiff's complaints of pain, particularly in cold or damp weather, which was aggravated by any attempted long periods of standing or walking, Dr. Lucey concluded that the condition is permanent and plaintiff will continue to suffer from pain in the stump area. Tr. 179.

Finally, Dr. James F. Connell, a specialist in general surgery, who testified at the hearing, also submitted written reports of two examinations of plaintiff he conducted. Tr. 175–177. In his testimony, Dr. Connell was also of the opinion that based on his examinations of plaintiff's right leg, there has been deterioration accompanied by pain. He was also of the view that the irritation of the prosthesis was responsible for the growth of three cysts which had to be removed surgically, and that eventually plaintiff would require a higher amputation to "get a better cuff of skin and fatty substance . . . underneath the bone which is protruding against his skin." Tr. 73–74.

The Social Security Act defines disability as the

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(a)(1).

Plaintiff clearly has suffered such an impairment for a continuous period of far longer than 12 months since onset on July 16, 1974. Concededly he was insured under the Act during the five-year period ending September 30, 1979.

There is no serious question that he cannot return to his former occupation. Nor on this record has the Secretary come forward with substantial evidence to overcome the disabling severity of plaintiff's physical (and perhaps mental) impairment or demonstrate what gainful activity a person in his condition can undertake. The Secretary's new guidelines do not relieve him of that burden. *Campbell v. Secretary of the Department of Health and Human Services*, 665 F.2d 48 (2d Cir. 1981).

Plaintiff's motion for judgment on the pleadings is granted and the case is re-

manded to the Secretary for determination of an appropriate period of disability and the payment of disability benefits to plaintiff.

SO ORDERED.